### OLSEN v. DRAPER et al.

United States District Court
E. D. New York.

June 2, 1953.

860

William A. Blank, Brooklyn, N. Y., and Samuel E. Lepler, New York City, for plaintiff.

Richard R. Bongartz, New York City (William A. Colton, New York City, of counsel), for defendant.

GALSTON, District Judge.

This is a motion made by the plaintiff, pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. for partial summary judgment with respect to the separate defense set forth in the defendant's answer, on the ground that there is no genuine issue as to any material fact and that the plaintiff is entitled to a judgment as a matter of law.

The action was instituted by the plaintiff as the duly appointed administratrix of the estate of Arthur J. Olsen. The complaint alleges that on or about November 22, 1950, at Richmond Hill, Queens, Long Island, the said Arthur Olsen was a passenger for hire on one of the defendant's trains, and that due to the negligence of the defendant the intestate received injuries from which he died. In his answer, the defendant set up a separate defense as follows:

"V. That on November 22, 1950, the plaintiff's intestate was a non-paying passenger on the train referred to in the complaint; that plaintiff's intestate was aboard said train solely by virtue of annual pass No. P–13890 issued to him by the Trustee of the property of The Long Island Rail Road Company and accepted by him subject to the conditions imposed on said pass as follows:

" 'Conditions'

" 'This pass is not transferable
* * *.

" 'The person accepting and using it thereby assumes all risk of accident to person or property, states that he or she is not prohibited by law from receiving free transportation and agrees to make only such use of the pass as is permitted by federal and state laws.' "

The affidavit of William A. Blank, the plaintiff's attorney, states that the decedent, Olsen, was employed by the Pennsylvania Railroad Company as a "Lighter Captain" and that he had lived in Massapequa Park, Long Island, at the time of his death. It also appears from the affidavit that the decedent, as an employee of the Pennsylvania Railroad, was riding on the defendant's train on an annual pass issued by the Trustee of the Long Island Rail Road at the time he was injured. The contents of three letters passing between officials of the Long Island Rail Road and the Pennsylvania Railroad are quoted in the supporting Blank affidavit. These letters indicate that the Long Island Rail Road agreed to furnish train passes to Pennsylvania Railroad employees residing on Long Island, and that in return, the Pennsylvania Railroad agreed to issue train passes to Long Island Rail

Road employees as requested by the Long Island Rail Road.

■ A pass for passage on trains of the Long Island Rail Road Company system is necessarily intrastate in character, since the railroad's lines are confined to Long Island. It is not controverted that the plaintiff's intestate was on an intrastate journey, presumably on his way home from work, when he was injured. The Hepburn Act forbids the giving of an "interstate free * * * pass" and does not relate to the issuance of intrastate free passes. 49 U.S.C.A. § 1(7). Therefore, cases construing the extent of the rights of a person to whom an interstate pass is issued under the provisions of the Hepburn Act are not controlling here. See New York Central R. Co. v. Mohney, 252 U.S. 152, 40 S.Ct. 287, 64 L.Ed. 502. We must look to New York law in determining the legal effect of the conditions contained in the pass issued to the plaintiff's intestate in respect to the limitation of liability of the defendant.

The plaintiff has cited Vroom v. New York Central & H. R. R. R. Co., 129 App. Div. 858, 115 N.Y.S. 1063, 1065, affirmed without opinion, 197 N.Y. 588, 91 N.E. 1121, as supporting its motion. The court there held that an employee of a railroad who is injured while riding on one of his employer's trains, to and from his home to work on a free pass, is considered an employee of the railroad while using such pass, and may recover for injuries sustained by the negligence of the railroad, despite the conditions contained in the pass exempting the railroad from liability for negligence. The court distinguished the situation of a railroad employee riding to and from home to his work on a pass from that of a non-employee passenger riding on a free pass. It held that in the case of an employee under the circumstances in the case before it, the pass was not a mere gratuity but a part of the contract of employment, entitling him to transportation to and from work. This holding of the court was an alternative ground for its decision, for as noted, it also held that even though the decedent there was riding on a free pass, the plaintiff was entitled to recover for the negligence of the defendant railroad in causing the death of her intestate because the decedent was riding as an employee of the defendant, and "was not a passenger being transported free". The Vroom case is not on all fours with the instant case, however, for here the plaintiff's intestate was not an employee of the defendant's railroad. On the other hand, his status cannot be equated to that of the ordinary passenger who is transported by the defendant's railroad by virtue of his having paid the regular fare.

There is agreement here that whether the conditions limiting liability are binding upon the plaintiff depends upon whether the pass upon which the decedent was riding was a "mere gratuity" or was issued for good and valid consideration. Under the agreement by which the Long Island Rail Road issued passes to the employees of the Pennsylvania Railroad, the parties intended that the decision as to which employees would be given such passes was to be made by the Pennsylvania Railroad. Consequently, for the plaintiff to recover on the third party beneficiary principle or on some other ground, it is important to determine whether the issuance of the passes is to be regarded as a part of the contract of employment with the Pennsylvania Railroad.

■ In this connection the following statement found in Montalbano v. New York Central R. R. Co., 267 App.Div. 617, at page 620, 47 N.Y.S.2d 877, at page 880, is pertinent:

"If the pass issued to him was part of his contract of employment, and not a mere gratuity, the defendant could not relieve itself from negligence by so providing in the pass. [McK.Consol. Laws, c. 49], Section 64, Article 3, Railroad Law. If his pass was a mere gratuity, the reverse would be true. Whether the pass was part of the intestate's contract of employment was, under all the circumstances, a question for the jury and it was error to take that question from the jury. Vroom v. New York Central & H. R. R. R. Co., 129 App.Div. 858, 861, 115 N.Y.S. 1063, 1065, affirmed 197 N.Y. 588, 91 N.E. 1121; Gill v. Erie Railroad Co., 151 App.Div. 131, 135, 136, 135 N.Y.S. 355."

See also Kroehling v. City of New York, 270 App.Div. 909, 61 N.Y.S.2d 474.

It is true that in the Montalbano case, supra, like in the Vroom case, the plaintiff's action was against the employer. However, the plaintiff here does not claim to have greater rights as against the defendant than she would have had if the decedent had been injured while riding on a train of the Pennsylvania Railroad by virtue of a similar employee pass.

■ The plaintiff has submitted part of the minutes of the trial in the case of Lewis H. Patterson v. William H. Draper, as substituted Trustee of the Long Island Rail Road Co., held on June 12, 1951 in another part of this court, in support of her motion. The plaintiff in that case was injured in the same train accident as the intestate of the plaintiff here. The plaintiff there was also an employee of the Pennsylvania Railroad Company and was riding on the defendant's train on a pass received from the Long Island Rail Road, but as an employee of the Pennsylvania Railroad. On the trial, the court treated the issue raised by the separate defense of the defendant that the plaintiff was a non-paying passenger as a question of fact for the jury to determine. It therefore submitted the following question to the jury, to be decided by it as a separate issue preliminary to hearing other testimony:

"Was the pass a gratuity, or on the contrary, was the pass based on a good consideration?"

The jury answered "No" to the first part of the question, and "Yes" to the second part.

It is the plaintiff's contention that since the separate defense in the Patterson case was "adjudicated adversely to this defendant on June 12, 1951, in law and fact, by the verdict of a jury and direction of the entry of judgment by the Court," it is unnecessary to try the issue de novo here.

The records of the Clerk of the Court indicate that the verdict of the jury in the Patterson case on the issue of the separate defense was filed on June 12, 1951. They also show, however, that the Patterson case was settled during the course of the trial, and that an Order of Discontinuance was filed August 22, 1951. In the circumstances, it cannot be said that there was an adverse judgment in the Patterson case binding on the defendant so as to bar the separate defense alleged here. Nor can it be said that the court there "decided a controlling principle of law" which this court is bound to follow.

In respect to the plaintiff's contention that the letters referred to above and the deposition of David E. Smucker, taken in the Patterson case, as the then Trustee of the Long Island Rail Road, "furnish controlling and compelling reasons for the granting of the relief herein sought," it may be noted that the letters in question express the desire that "the present procedure for issuance of passes be perpetuated," without disclosing what that "present procedure" is. Moreover, the plaintiff in the Patterson case testified in respect to his employment status with the Pennsylvania Railroad as it related to his right to a pass. This testimony, as well as the Smucker deposition, was submitted to the jury for its consideration in respect to the validity of the separate defense. The defendant does not concede that the employment status of the plaintiff's intestate in the instant case was exactly the same as that of the plaintiff in the Patterson case as it may bear upon the character of the pass issued to the intestate.

■ In view of the foregoing, it must be concluded that the validity of the separate defense must be determined at the trial by the jury. Therefore, the plaintiff's motion is denied. Settle order.